UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TYRONE WALLACE,

        Petitioner,

v.                              Case No. 3:15-cv-1206-J-34MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## **ORDER**

### I. Status

      Petitioner Tyrone Wallace, an inmate of the Florida penal system, initiated this action on October 7, 2015,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. 1). Wallace is proceeding on an Amended Petition (Amended Petition; Doc. 27), filed on July 2, 2018. In the Amended Petition, Wallace challenges a 2006 state court (Hamilton County, Florida) judgment of conviction for home invasion robbery and kidnapping. Wallace raises twelve grounds for relief. See Doc. 27 at 4-18.[2] Respondents have submitted a memorandum in opposition to the Amended Petition. See Amended Answer in Response to Order to Show Cause (Resp.; Doc. 30) with exhibits (Resp. Ex.). Wallace submitted a brief in reply on November 7, 2018. See Reply to Amended Answer in Response to Order to Show Cause (Reply; Doc. 37). This case is ripe for review.

_____

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

## II. Procedural History

On May 24, 2004, the State of Florida (State) charged Wallace with home invasion robbery while armed (count one) and kidnapping (count two). Resp. Ex. A at 1-5. Wallace proceeded to a jury trial, at the conclusion of which the jury found Wallace guilty as to each count, with specific findings that Wallace did not possess a firearm during the commission of either offense. Id. at 60-61. On May 4, 2006, the circuit court adjudicated Wallace to be a prison releasee reoffender (PRR) and sentenced him to a term of incarceration of thirty years in prison as to count one and life in prison as to count two. Id. at 73-84. The court ordered each count to run concurrently. Id. at 84.

On direct appeal, Wallace raised three issues in his initial brief:  the circuit court erred in denying his motion for judgment of acquittal (issue one); the circuit court erred in allowing the state to use a peremptory challenge (issue two); and the circuit court abused its discretion in not granting a motion for mistrial based on the state's closing argument (issue three). Resp. Ex. K at 21-33. The State filed an answer brief. Resp. Ex. L. On March 28, 2007, Florida's First District Court of Appeal (First DCA) entered a Mandate per curiam affirming the judgment and sentences without a written opinion. Resp. Ex. N.

On April 16, 2008, Wallace filed a pro se petition for writ of habeas corpus with the First DCA in which he alleged ineffective assistance of appellate counsel for failing to raise a claim that the prosecutor improperly bolstered and vouched for the credibility of witnesses during closing arguments. Resp. Ex. N. The First DCA denied the petition on the merits on May 30, 2008. Resp. Ex. Q. Wallace filed a motion for rehearing, Resp. Ex. R, which the First DCA denied on July 2, 2008. Id.

Also on April 16, 2008, Wallace filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 Motion), in which he raised fourteen grounds for relief alleging trial counsel was ineffective for: (1) failing to review discovery with him; (2) failing to explain the law in relation to the facts; (3) failing to transcribe the deposition of Linda Federick; (4) failing to object to comments made during opening statements; (5) failing to object to the state's questioning of Belinda Federick; (6) failing to request a curative instruction; (7) failing to instruct him that he could explain his prior convictions; (8) failing to reasonably question witness Joe Drury; (9) calling Chief Farren Gantous as a defense witness; (10) failing to timely object to the prosecutor's reaction to testimony; (11) failing to object to improper closing arguments; (12) failing to request a special jury instruction; (13) failing to be conversant with the sentencing statutes; and (14) failing to object to the lack of evidence concerning his PRR designation. Resp. Ex. BB at 1-22. The circuit court denied the motion on October 29, 2014. Id. at 31-48. On June 3, 2015, the First DCA per curiam affirmed the circuit court's order without a written opinion. Resp. Ex. FF. Wallace filed a motion for rehearing, id., which the First DCA denied. Id. The First DCA issued its Mandate on August 3, 2015. Resp. Ex. GG.

On February 28, 2009, Wallace filed another motion for postconviction relief pursuant to Rule 3.850 (Second Rule 3.850 Motion), in which he raised nine grounds for relief alleging that trial counsel: (1) failed to object to inadmissible hearsay; (2) failed to object to inadmissible hearsay; (3) failed to investigate and call Ronald Scoff as a witness; (4) misadvised him as to the maximum punishment he faced if he proceeded to trial; (5) failed to call Linda Federick as an alibi witness; (6) failed to request a curative instruction

and move for a mistrial; (7) failed to request a proper jury instruction for robbery; and (8) failed to file a timely motion for new trial. Resp. Ex. S at 1-12. Wallace also raised a ninth claim that the cumulative effect of counsel's errors prejudiced him. Id. at 12. On September 30, 2010, the circuit court denied every ground except ground four, and ordered the State to respond to ground four. Id. at 30-36. Following an evidentiary hearing, the circuit court denied relief as to ground four on March 14, 2011. Id. at 125-29. The First DCA per curiam affirmed the circuit court's order on April 26, 2012, and issued its Mandate on June 22, 2012. Resp. Ex. W. On October 25, 2016, Wallace filed a motion with the circuit court seeking to set aside the March 14, 2011 Order (Motion to Recall). Resp. Ex. KK. The circuit court denied the motion on February 9, 2017. Id. at 137-50. The First DCA affirmed the circuit court's denial of the Motion to Recall in a written opinion filed on August 24, 2018. Resp. Ex. OO.

On May 18, 2013, Wallace filed a third motion for postconviction relief pursuant to Rule 3.850, in which he alleged his postconviction counsel was ineffective at the evidentiary hearing held on ground four of his Second Rule 3.850 Motion. Resp. Ex. II. The circuit court denied the motion on August 16, 2016. Resp. Ex. JJ.

On July 18, 2013, Wallace filed a petition for writ of habeas corpus with the circuit court, in which he contended the charging document was defective. Resp. Ex. X at 1-5. The circuit court denied the petition on July 25, 2013. Id. at 10-12. Wallace filed a motion for rehearing, id. at 14-15, which the circuit court denied. Id. at 18. Wallace appealed but the First DCA dismissed the appeal as untimely. Resp. Ex. AA.

### III. One-Year Limitations Period

This action is timely filed within the one-year limitations period. <u>See</u> 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. <u>See</u> <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007); <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318-19 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro</u>, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Wallace's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

### V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief

functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court recently stated:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited

scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[3] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting

---

[3] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

                    Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175
                    L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)'s "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that a petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any

constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[4] supra, at 747–748, 111 S. Ct. 2546; Sykes,[5] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other

---

[4] Coleman v. Thompson, 501 U.S. 722 (1991).
[5] Wainwright v. Sykes, 433 U.S. 72 (1977).

requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[6] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

"[A] claim for ineffective assistance of counsel, if both exhausted and not procedurally defaulted, may constitute cause." Henry v. Warden, Ga. Diag. Prison, 750 F.2d 1226, 1230 (11th Cir. 2014); see also Carrier, 477 U.S. at 488; Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009) (citing Edwards v. Carpenter, 529 U.S. 446, 451

---

[6] Murray v. Carrier, 477 U.S. 478 (1986).

(2000)) ("An attorney's constitutional ineffectiveness in failing to preserve a claim for review in state court may constitute 'cause' to excuse a procedural default."). But the petitioner must first present his or her ineffective assistance claim to the state courts as an independent claim before he may use it to establish cause to excuse the procedural default of another claim. Carrier, 477 U.S. at 488; see also Henderson v. Campbell, 353 F.3d 880, 896 n.22 (11th Cir. 2003). If the secondary ineffective assistance claim is itself procedurally defaulted, the "procedurally defaulted ineffective assistance of counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective assistance claim itself." Henderson, 353 F.3d at 897 (citing Edwards, 529 U.S. at 446 and Carrier, 477 U.S. at 478).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying

offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, - U.S. at -, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). "In addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state

court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As Ground One, Wallace alleges that he proceeded to trial because his trial counsel never reviewed discovery with him and refused to answer his questions about certain witnesses. Doc. 27 at 4. Wallace raised a similar claim in the circuit court as ground one of his Rule 3.850 Motion. Resp. Ex. BB at 7. In denying relief on this claim, the circuit court stated:

> As pled, Ground [O]ne is insufficient. Nonetheless, this Court finds Ground One is refuted by the record. On March 30, 2006, a hearing was held regarding a motion to continue filed by Counsel. During that hearing, a <u>Nelson</u>[7] inquiry was conducted as the Defendant expressed a desire to discharge Counsel due to his dissatisfaction with Counsel's representation. When asked by this Court about his dissatisfaction with Counsel, the Defendant stated, in part,

> > Like he supposed to have been something in my papers, all of the information that I gave him like my personal records when the incident happened with my car and reports and all that, I haven't received none of that. Then like when stuff goes on, doesn't let me know what be going on. If I call him, I don't get my return message, none of that, I am just really out there lost, don't know what is going on basically.

> Thereafter, Counsel for [sic] explained,

---

[7] <u>Nelson v. State</u>, 274 So. 2d 256 (Fla. 4th DCA 1973).

Judge, I can answer that. I did an in-depth interview with Mr. Wallace on February 21, 2005, beginning at 9:11 a.m., and discussed his case with him in great detail at that time to get his response to the charges. I reviewed the court file on February 7, 2005, and outlined the history of the case so that I would have knowledge of that. I interviewed Mr. Wallace again in detail on May 5, 2005, beginning at 10:30 a.m., to review the case and discuss potential witnesses with him.

. . .

I discussed the case with him on a number of other occasions when we had pretrials in the case. He was with me when I went out and interviewed Paula Federick, the girlfriend's mother. We spent a good part of that day together. Paula Federick was interviewed on January 23 of this year, yes, sir.

Without going into blow by blow, I have spoken with him numerous times by telephone about his case. We discussed the fact that I was going down to take these depositions. Before that when I talked to the witnesses by phone, I talked with him about what the witnesses had told me.

. . .

Basically he – Mr. Wallace is fully aware of the investigation that I have done in his case. . . . I tried to track down every witness.

Throughout the hearing, the Defendant expressed concerns with Counsel's representation, but ultimately Counsel was permitted to continue his representation as the Defendant failed to show good cause for Counsel's discharge.

As evidenced in the transcript of the motion hearing, Counsel kept a record of his discussions with the Defendant, these discussion[s] concerned witness statements provided by State witnesses during depositions, and Counsel kept the Defendant abreast of the status of his case. Moreover, the concerns expressed in the instant motion are similar to those

15

voiced by the Defendant at the March 30, 2006 motion hearing. At the time, this Court found no good reason to grant's [sic] Defendant's request for Counsel's discharge. This Court now finds that Defendant's Ground One is refuted by the record and does not constitute defective performance nor was the Defendant prejudiced under the <u>Strickland</u> standard. Accordingly, Ground One is denied.

<u>Id.</u> at 34-35 (record citations omitted). The First DCA per curiam affirmed the circuit court's order without a written opinion. Resp. Ex. FF; GG.

To the extent that the First DCA decided this claim on the merits,[8] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Wallace is not entitled to relief on the basis of this claim.

Even if the state appellate court's adjudication of this claim is not entitled to deference, the claim in Ground One is without merit. As an initial matter, the Court finds this claim is due to be denied as conclusory, as Wallace gives sparse factual allegations in support of this claim and has not pled facts supporting a showing of prejudice. <u>See</u> <u>Borden v. Allen</u>, 646 F.3d 785, 810 (11th Cir. 2011) (Rules Governing Section 2254 Cases in the United States District Court "mandate 'fact pleading' as opposed to 'notice pleading.'"); <u>Wilson v. United States</u>, 962 F.2d 996, 998 (11th Cir. 1992) (holding that

---

[8] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." <u>Wilson</u>, 138 S. Ct. at 1194.

conclusory allegations of ineffective assistance of counsel are insufficient to merit habeas relief).

Nonetheless, the claim also fails because the record refutes Wallace's claim of deficient performance. Prior to trial, the circuit court held a hearing on Wallace's request to discharge his attorney. Resp. Ex. I. During that hearing, Wallace expressed similar dissatisfaction with his attorney as he does here in Ground One. Id. Trial counsel, Jimmy Hunt, replied that he had multiple meetings with Wallace to discuss the case in-depth, Wallace attended a few witness interviews with him, and he communicated with Wallace about his interviews with other potential witnesses. Id. at 9-11, 18-20, 25, 29-30. Likewise, at the evidentiary hearing on ground four of Wallace's Second Rule 3.850 Motion, Hunt testified he had multiple in-person and telephonic meetings with Wallace and they discussed witness testimony during those meetings. Resp. Ex. T at 18, 21, 24-27. Wallace has not provided the Court with any evidence, clear and convincing or otherwise, to rebut the circuit court's factual determination that Hunt's testimony was credible on this issue. Docs. 27; 37. Therefore, the Court finds Hunt's testimony refutes Wallace's claim. See 28 U.S.C. § 2254(e)(1) (a state court's determination of a factual issue is presumed correct unless a petitioner, through clear and convincing evidence, rebuts the presumption of correctness). Accordingly, the claim raised in Ground One is due to be denied.

### B. Ground Two

In Ground Two, Wallace contends that his trial counsel was ineffective because he did not explain the elements of the charged crimes, rules of court, and trial preparation.

Doc. 27 at 5. According to Wallace, but for his counsel's ineffectiveness he would not have proceeded to trial and he would have accepted a ten-year plea offer. Id.

Wallace raised a similar claim in state court as ground two of his Rule 3.850 Motion. Resp. Ex. BB at 8. The circuit court denied this claim, stating:

> On March 2, 2011, this Court held an evidentiary hearing on Ground Four of Defendant's second postconviction motion. In that hearing, Counsel was called as a witness and asked by the State whether he reviewed the possible consequences of Defendant's choice to reject or accept a plea offer. Counsel responded,
>
> > [w]ell, in the initial interviews, Mr. Wallace was denying that he committed the crimes. He was claiming an alibi and defense. And I don't have particular notes of discussing possible sentences and I certainly wouldn't have dwelled on it at that time, given the fact that he was telling me he was innocent of the charges. But, as the case neared actual trial where he had to make a decision on whether to accept a plea bargain or go to trial, we certainly discussed the possible consequences of being found guilty or accepting a plea.
>
> Thereafter, the State continued to inquire about Counsel's communications with the Defendant:
>
> > STATE: Did there come a time when you received a plea offer from the State?
> >
> > COUNSEL: Yes.
> >
> > STATE: Can you tell the Court about that plea?
> >
> > COUNSEL: Kim Sedor was representing the State. She offered me, verbally, a plea of ten years imprisonment with no mandatory minimum.

STATE: And did you discuss that with your client?

COUNSEL: I did.

STATE: And what was his response to that plea offer?

COUNSEL: He rejected it, he said he was innocent, he wanted to go to trial. In fact, he told me that there would be, essentially there would be no plea bargain.

STATE: Okay. During that period of time, did you have discussion with him about possible ranges of sentences and how long he would be in prison?

COUNSEL: Yes. Actually made written notes of that. And there was two times that I wrote down that we actually discussed the possible consequences of a guilty verdict at trial. And those were on March 31, 2006, and April 3, 2006. I have a memory of discussing that with him at other times, but at that point I actually made written notes of my advice to him. And, therefore, I'm absolutely confident we discussed it.

At the hearing, Counsel provided additional testimony regarding his communications with the Defendant and read into evidence notes he contemporaneously wrote during his communications with the Defendant. Based on the testimony provided in the evidentiary hearing, the Court denied Ground Four of Defendant's subsequent postconviction motion.

This Court now finds that the record of the evidentiary hearing, in combination with the record of the motion hearing above, demonstrates that Counsel kept records of his communications with the Defendant; that during these communications the Defendant demonstrated an

unwillingness to accept a plea offer notwithstanding the consequences of being found guilty at trial, and that Counsel kept the Defendant informed about his case, and the Defendant understood the substance of Counsel's communications. As such, this Court finds that Ground Two is unfounded and refuted by the record. Accordingly, Ground Two is denied.

Id. at 35-37 (record citations omitted). The First DCA per curiam affirmed the circuit court's order. Resp. Ex. FF; GG.

To the extent that the First DCA decided this claim on the merits,[9] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Wallace is not entitled to relief on the basis of this claim.

Nevertheless, even if the state court's adjudication of this claim is not entitled to deference, the claim in Ground Two is without merit because the record refutes it. Hunt's testimony at the Nelson hearing and at the evidentiary hearing on Wallace's Second Rule 3.850 Motion reflect that he kept Wallace informed of both the law and ongoing discovery during the pre-trial phase. Resp. Exs. I at 9-11, 18-20, 25, 29-30; T at 18, 21, 24-27. Moreover, at the evidentiary hearing, Hunt testified that Wallace was adamant about proceeding to trial because he believed he was innocent. Resp. Ex. T at 20, 25-27. The

---

[9] In accordance with Wilson, the Court presumes that the appellate court adopted the "relevant reasoning" of the circuit court. Wilson, 138 S. Ct. at 1194.

circuit court found Hunt's testimony credible and concluded Wallace rejected the plea even though Hunt had adequately informed Wallace about the law and facts. Resp. Ex. BB at 35-37. Wallace has not provided clear and convincing evidence rebutting the circuit court's findings of fact on this matter; therefore, the Court concludes these factual findings refute this claim. See 28 U.S.C. § 2254(e)(1). As such, Wallace's claim in Ground Two is due to be denied.

### C. Ground Three

Wallace maintains that his trial counsel was ineffective for failing to transcribe the deposition of Linda Federick. Doc. 27 at 6. According to Wallace, counsel told him Federick changed her testimony during the deposition, but after trial Federick told Wallace that she did not change her testimony and she was willing to testify. Id. Wallace asserts that the testimony would have aided his alibi defense. Id.

Wallace raised a similar claim in both his Rule 3.850 Motion and in his Second Rule 3.850 Motion. Resp. Exs. S at 7-8; BB at 9. The circuit court first denied this claim as raised in the Second Rule 3.850 Motion, stating:

> First, the Defendant made these same allegations at a motion hearing held a couple days prior to trial. In this hearing, the Defendant requested to remove counsel as his attorney because counsel failed to secure certain alibi witnesses, including Linda Frederick [sic]. In response, counsel acknowledged that these witnesses had earlier corroborated the Defendant's story, however, when counsel went to depose them, "the two that [had previously] corroborated [the Defendant's] story no longer corroborated his story . . . They changed their testimony in effect from what they [said earlier]." It appears these witnesses were never deposed because of this change in story. Counsel further explained that the Defendant was upset that he was not present at this deposition. Therefore, counsel asserted that "[the Defendant] doesn't really accept the fact that [the alibi witnesses] changed their testimony and [the Defendant] questioned

whether I was being truthful with him about that." Ultimately, the Court concluded that counsel's representation was competent and counsel remained on the case.

Second, counsel has no control over what a witness may or may not say. Because these witnesses changed their story and no longer corroborated the Defendant's story, the failure of counsel to call these witnesses in trial cannot constitute ineffective assistance. Hence, the Defendant has failed to establish that counsel was deficient in his representation and, therefore, the Defendant has failed to meet the Strickland standard for ineffective claims. Accordingly, Ground Five is **DENIED**.

Resp. Ex. S at 35 (record citations omitted). Additionally, in denying this claim as raised in the Rule 3.850 Motion, the circuit court explained:

The record reflects that at trial, Counsel did not call Linda Federick as a witness. As is evidenced by the attached March 30, 2006 Motion Hearing Transcript, Counsel made this decision because he believed Linda Federick's testimony would have been detrimental to the Defendant's alibi defense. Accordingly, the probative value at trial of the transcription of Linda Federick's deposition is speculative at best, therefore, this Court cannot find that the Defendant was prejudiced by Counsel's alleged defective performance.

Moreover, it appears that the Defendant disagreed with Counsel's decision not to call Linda Federick as a witness, and he believed that Counsel misrepresented to the Court that Linda Federick changed her testimony. This issue was raised in greater detail in Ground Five of Defendant's second rule 3.850 motion, and the Court denied the ground on the merits. Therefore, Ground Three of the instant motion is denied.

Id. at 37 (record citations omitted). The First DCA per curiam affirmed the circuit court's order. Resp. Ex. FF; GG.

To the extent that the First DCA decided this claim on the merits,[10] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Wallace is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim in Ground Three is without merit. Wallace's conclusory allegation that Linda Federick told him after trial that she did not change her story and was willing to testify does not constitute clear and convincing evidence to overcome the circuit court's factual finding that Linda Federick changed her story. See 28 U.S.C. § 2254(e)(1). Notably, although Wallace presents his belief that Linda Federick would have testified favorably, he provides no evidence to support that claim. Accordingly, the Court presumes the circuit court's factual findings on this issue are correct and that Hunt did not call Linda Federick as a witness because based upon his interview of her, Hunt believed her testimony would have been harmful to Wallace's defense. This is a reasonable trial strategy; therefore, counsel cannot be deemed ineffective for failing to call a witness who would not have helped the defense. See Goff v. United States, 693 F. App'x 854, 855 (11th Cir. 2017) ("The choice not to call either of them as witnesses was not so patently

---

[10] In accordance with Wilson, the Court presumes that the appellate court adopted the "relevant reasoning" of the circuit court. Wilson, 138 S. Ct. at 1194.

unreasonable that no competent lawyer would have chosen it, and was the epitome of a strategic decision."). Moreover, Wallace presented three witnesses other than himself to corroborate his alibi defense. Resp. Exs. F at 234, 252-65; G at 317-402. In light of the alibi evidence presented at trial, Linda Federick's testimony, even if favorable to Wallace, would have been merely cumulative. Wallace cannot demonstrate prejudice where the proposed testimony of an uncalled witness would have been merely cumulative to other evidence or testimony provided at trial. Hall v. Thomas, 611 F.3d 1259, 1293 (11th Cir. 2010); Adams v. Balkcom, 688 F.2d 734, 741 (11th Cir. 1982). As such, Wallace has failed to demonstrate deficient performance or prejudice; therefore, the claim in Ground Three is due to be denied.

### D. Ground Four

In Ground Four, Wallace avers that his trial counsel was ineffective because he failed to object to unspecified comments the prosecutor made during opening statements. Doc. 27 at 7. According to Wallace, the prosecutor "presented herself as a witness during opening statement." Id.

Wallace raised a similar claim in his Rule 3.850 Motion. Resp. Ex. BB at 10. The circuit court denied this claim, stating:

> First, prosecutors are allowed during opening statements to articulate the facts they intend to prove against defendants. The alleged improper conduct in the instant case is nothing more than the State introducing the jurors to the facts the State intended to prove against the Defendant through the presentation of evidence. Second, the record demonstrates that during the Defense's opening statement, Counsel explained to the jurors that the prosecutor was not a witness to the crime; that in fact, she did not witness a single event that transpired during the commission of the crimes; and that all she knows is based on testimony provided by witnesses. Accordingly, Counsel mitigated any prejudicial

> effect the alleged improper prosecutorial statements may
> have had on the jurors by addressing them during his opening
> statement. Therefore, this Court finds that Counsel's inaction
> did not rise to the <u>Strickland</u> standard of defectiveness nor did
> it prejudice the Defendant. Ground Four is denied.

<u>Id.</u> at 38. The First DCA per curiam affirmed the circuit court's order. Resp. Ex. FF; GG.

To the extent that the First DCA decided this claim on the merits,[11] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Wallace is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim in Ground Four is without merit. Initially, the Court finds this claim is due to be denied as conclusory because Wallace has failed to identify which comments were allegedly improper and how those comments prejudiced him. <u>See</u> <u>Borden</u>, 646 F.3d at 810; <u>Wilson v. United States</u>, 962 F.2d at 998. In any event, having reviewed the State's opening statement, Resp. Ex. E at 12-18, the Court finds the prosecutor did not present herself as a witness, but instead summarized what she thought the evidence would be at trial, which is the proper role of opening statements. <u>See</u> <u>United States v. Anthony</u>, 345 F. App'x 459, 464 (11th Cir. 2009) ("An opening statement gives

---

[11] In accordance with <u>Wilson</u>, the Court presumes that the appellate court adopted the "relevant reasoning" of the circuit court. <u>Wilson</u>, 138 S. Ct. at 1194.

counsel the opportunity to state what evidence will be presented in order to make it easier for the jurors to understand what is to follow, and is not an occasion for argument."). The prosecutor's statements that Wallace robbed and kidnapped the victims, Resp. Ex. E at 12-15, were proper comments on evidence the State eventually introduced from the victims who identified Wallace as the perpetrator. Resp. Exs. E at 26-27, F at 99-100. Accordingly, there would have been no grounds on which to object to these comments. See Anthony, 345 F. App'x at 464. As counsel cannot be deemed ineffective for failing to raise a meritless objection, see Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir. 2005) (holding counsel cannot be ineffective for failing to raise a meritless argument); Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994) (noting that "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."), the claim raised in Ground Four is due to be denied.

### E. Ground Five

Wallace contends that his trial counsel was ineffective for failing to object to leading and prejudicial questioning of an unnamed State witness. Doc. 27 at 8. Wallace asserts that this questioning attacked his alibi defense and bolstered the testimony of another unnamed state witness that had been previously impeached. Id.

Wallace raised a similar claim in state court as ground five of his Rule 3.850 Motion. Resp. Ex. BB at 11. In denying this claim, the circuit court explained:

> At trial, the State called Ms. [Belinda] Federick as a witness. Ms. Federick testified that she is the cousin of Nakeisha Federick, Defendant's then girlfriend and the mother of two of his children. Ms. Federick also testified that the Defendant was in Hamilton County at the time the offenses were committed and that she witnessed the Defendant and Nakeisha Federick in a bedroom with a large

sum of money. During that portion of the testimony, the State asked Ms. Federick,

> STATE:          What did you do while you were in that bedroom with them?
>
> MS. FEDERICK:   I was sitting listening.
>
> STATE:          Did you see anything in that bedroom?
>
> MS. FEDERICK:   Yea, I saw some money.
>
> STATE:          Tell the jury what condition was that money in?
>
> MS. FEDERICK:   It was – some of it was folded up like bundled and some of it was just loose.
>
> STATE:          How was it bundled?
>
> MS. FEDERICK:   Like wrapped up in a Ziplock bag.
>
> STATE:          In rubberbands?
>
> MS. FEDERICK:   Yeah.
>
> STATE:          Rubberbands on it?
>
> MS. FEDERICK:   Yea.
>
> STATE:          What were they doing with that money?
>
> MS. FEDERICK:   They just – at first they wasn't doing nothing with it. And then he is like put is up, and then he left.

Defendant contends that Counsel should have objected to this line of questioning.

While this Court agrees that the State's questions were leading, this Court finds that Counsel's failure to object to two leading questions did not constitute defective performance under the Strickland standard. This Court further finds the Defendant was not prejudiced by Counsel's failure to object to the leading questions. The testimony elicited through the leading questions was not material in light of the overall weight of the evidence presented against the Defendant. The State presented seven witnesses who testified in one form or another that the Defendant was in Hamilton County on the date of the Robbery and Kidnapping. Moreover, the State presented the testimony of both victims, Tamika Pierce and Cornelius Daniels, who identified the Defendant as the perpetrator. While an objection could have prevented Ms. Federick from providing testimony that corroborated Tamika Pierce's testimony, the overall fact corroborated was not material to the State's case-in-chief. Accordingly, this Court finds that Counsel's failure to object was not defective performance nor did it prejudice the Defendant. Ground Five is denied.

Id. at 38-39 (record citations omitted). The First DCA per curiam affirmed the circuit court's denial of this claim. Resp. Ex. FF; GG.

To the extent that the First DCA decided this claim on the merits,[12] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Wallace is not entitled to relief on the basis of this claim.

---

[12] In accordance with Wilson, the Court presumes that the appellate court adopted the "relevant reasoning" of the circuit court. Wilson, 138 S. Ct. at 1194.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim in Ground Five is without merit. The Court finds this claim is due to be denied as conclusory because Wallace has failed to allege which questions his counsel should have challenged. See Borden, 646 F.3d at 810; Wilson v. United States, 962 F.2d at 998. Moreover, Wallace cannot demonstrate prejudice. The record reflects both victims knew Wallace prior to the robbery and both victims positively identified Wallace as the perpetrator. Resp. Exs. E at 26-44; F at 97-116. Additionally, the State provided the testimony of four witnesses other than the victims who refuted Wallace's alibi defense. Resp. Ex. F at 134-88. In fact, one of those witnesses, Belinda Federick, testified that she overheard Wallace telling his girlfriend that he had just robbed the victims and helped them count the stolen money. Id. at 155-58. Even if the answers to the alleged leading questions were omitted, Belinda Federick's testimony still incriminated Wallace. In light of the substantial evidence of Wallace's guilt, the Court finds there is no reasonable probability the outcome of the trial would have been different had the State not asked leading questions. As Wallace cannot demonstrate prejudice, his claim in Ground Five is due to be denied.

### F. Ground Six

In Ground Six, Wallace asserts that his trial counsel was ineffective because he failed to request a curative instruction after the circuit court sustained his hearsay objection. Doc. 27 at 9. Wallace claims the State later used that testimony against him during its closing arguments. Id.

Wallace raised a similar claim in his Rule 3.850 Motion. Resp. Ex. BB at 12. The circuit court denied the claim, explaining:

The Defendant challenges Counsel's failure to seek a curative instruction from the Court after Counsel's hearsay objection was sustained and the following exchange between the parties, the presiding judge, and Ms. Federick occurred:

| | |
|---|---|
| STATE: | Do you know what he was talking about? |
| COUNSEL: | I object to that question. That is improper. |
| STATE: | Judge, if she knows. |
| COURT: | Overrule the objection if she said does she know. |
| COUNSEL: | Judge, at most it's hearsay. |
| COURT: | I don't know where you're going to from there. |
| STATE: | Do you know what he was talking about? |
| MS. FEDERICK: | Yes. |
| STATE: | She and that man – |
| MS. FEDERICK: | <u>the man said he had already heard that</u> – |
| COURT: | No, no, no. Don't go into that. |
| STATE: | Don't go into that. But did they discuss the robbery at Cornelius Daniels' house? |
| MS. FEDERICK: | Who? |
| STATE: | Her and the man at the garage. |
| MS. FEDERICK: | Discuss what happened? |
| STATE: | Yes. |

| MS. FEDERICK: | No, they didn't discuss it. |
|---|---|
| STATE: | Did he tell her that's why she had to move the car? |
| COUNSEL: | Judge, that is leading. I object to it. |
| COURT: | Sustained. |

As to the above statements, the Defendant takes issue with the [underlined] portion of Ms. Federick's testimony.

The Defendant contends that Counsel should have sought a curative instruction to mitigate the prejudicial effect of Ms. Federick's statement, "The man said he had already heard that --." This Court finds this claim to be unfounded. The Court stopped Ms. Federick from finishing the statement that would have been hearsay, and thereafter, the State informed Ms. Federick to not "go into that." Ms. Federick did not "go into that." Moreover, the brief and incomplete statement provided by Ms. Federick was immaterial to the State's case-in-chief. Accordingly, this Court finds that Counsel was not defective, nor was the Defendant prejudiced by Counsel's failure to seek a curative instruction. Ground Six is denied.

Id. at 39-40 (record citations omitted and emphasis in original). The First DCA per curiam affirmed the circuit court's denial of this claim without a written opinion. Resp. Ex. FF; GG.

To the extent that the First DCA decided this claim on the merits,[13] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of

---

[13] In accordance with Wilson, the Court presumes that the appellate court adopted the "relevant reasoning" of the circuit court. Wilson, 138 S. Ct. at 1194.

the evidence presented in the state court proceedings. Thus, Wallace is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim in Ground Six is without merit. The Court again finds this claim is due to be denied as conclusory because Wallace has failed to identify which specific testimony he is challenging. See Borden, 646 F.3d at 810; Wilson v. United States, 962 F.2d at 998. In any event, to the extent his claim here is the same as that raised in ground six of his Rule 3.850 Motion, Wallace cannot demonstrate prejudice. The testimony complained of in ground six of his Rule 3.850 Motion was immaterial to the underlying charges because it dealt with damage to Wallace's vehicle, which occurred after the robbery and did not relate to Wallace's alibi defense. Resp. Ex. F at 168-69. Accordingly, in light of the substantial evidence of Wallace's guilt, as explained above in the Court's analysis of Ground Five, there is no reasonable probability the outcome of the trial would have been different had counsel sought a curative instruction. As such, Wallace's claim in Ground Six is due to be denied.

### G. Ground Seven

Wallace alleges that his trial counsel was ineffective for failing to inform him that he could "explain why he had prior felonies." Doc. 27 at 10. According to Wallace, his "explanation of his guilt of the prior convictions verses [sic] his innocence of [the] current offense would have negated the use of the prior convictions." Id.

Wallace raised this claim as ground seven of his Rule 3.850 Motion. Resp. Ex. BB at 13. The circuit court denied the claim, ruling:

> At trial, the Defendant took the witness stand, and during cross examination, the State briefly asked if he had

been previously convicted of a felony, and if so, how many prior convictions did he have. The Defendant explained that he had two prior felony convictions. The Defendant's prior conviction testimony ended there. It is evident from the Trial Transcripts that the State solicited such testimony as a means to impeach or attack the Defendant's credibility and reliability as a witness. After soliciting Defendant's response the State proceeded to ask questions on another subject matter.

This Court finds that Counsel's alleged failure to advise the Defendant that he could, on direct examination, explain his prior convictions did not constitute defective performance under the Strickland standard. Moreover, this Court finds that the Defendant was not prejudiced by Counsel's failure since other witnesses called by both the State and the Defense also provided testimony regarding their prior felony convictions, and they, like the Defendant, did not explain the nature of their prior convictions. Accordingly, prior conviction testimony had no greater effect on Defendant's credibility than on the credibility of the other witnesses, and therefore, this Court is hard-pressed to find that there is a reasonable probability that had Counsel properly advised the Defendant, the outcome at trial would have been different. Accordingly, this Court finds the Defendant was not prejudiced under the Strickland standard. Ground Seven is denied.

Id. at 40-41 (record citations omitted). The First DCA per curiam affirmed the circuit court's order. Resp. Ex. FF; GG.

To the extent that the First DCA decided this claim on the merits,[14] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of

---

[14] In accordance with Wilson, the Court presumes that the appellate court adopted the "relevant reasoning" of the circuit court. Wilson, 138 S. Ct. at 1194.

the evidence presented in the state court proceedings. Thus, Wallace is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim in Ground Seven is without merit because he cannot demonstrate prejudice. First, Wallace has failed to provide the Court with the alleged "explanation" of his prior convictions; therefore, this claim is not only conclusory but speculative in that it is impossible to determine how a jury would have considered his prior convictions in light of this unidentified "explanation." Second, one of the victims also had prior felony convictions and did not have the opportunity to explain his prior convictions. Resp. Ex. E at 27. Accordingly, as one of the victims and Wallace both had prior felony convictions and neither were allowed to explain the nature of the convictions, Wallace cannot reasonably contend that his credibility was more impugned than the victim's based on their criminal records. Third, as previously noted above, the State presented substantial evidence of Wallace's guilt as well as substantial evidence negating Wallace's alibi; therefore, there is no reasonable probability the outcome of the trial would have been different had Wallace been able to explain his prior convictions. In light of the above, the Court finds Wallace has failed to demonstrate prejudice and his claim in Ground Seven is due to be denied.

**H. Ground Eight**

In Ground Eight, Wallace contends that his trial counsel was ineffective for failing to properly question a witness. Doc. 27 at 11. According to Wallace, the victim testified Wallace robbed her because he needed money to pay for repairs to his car. Id. However, Wallace alleges that his counsel failed to ask the auto repair shop owner if Wallace owed

him money. Id. Had counsel asked this question, Wallace claims that the owner would have testified Wallace did not owe any money, which Wallace claims would have cast doubt on the State's case against him. Id.

In his Rule 3.850 Motion, Wallace raised a similar claim. Resp. Ex. BB at 14. In denying this claim, the circuit court stated:

> Mr. Drury is the automobile mechanic and owner of the shop where the Defendant's vehicle was located around the time the charged offenses were committed. Counsel called him as an alibi witness to corroborate the Defendant's defense that he was in Ft. Lauderdale on the day the robbery and kidnapping occurred, and as a witness whose testimony cast a negative light on Cornelius Daniels' credibility as one of the victims.
>
> This Court finds this claim is without merit. The Defendant's contention concerns evidence of his motive, or lack thereof, to steal money from the victims. While proving that the Defendant had a motive for stealing could have been persuasive, motive was not probative in the State's case against the Defendant. Therefore, testimony from Mr. Drury that the Defendant did not owe him debt would not have been probative against the State's case-in-chief, and would not have resulted in a different outcome at trial. Accordingly, this Court finds that Counsel was not defective under the Strickland standard and the Defendant did not suffer prejudice. Ground Eight is denied.

Id. at 41-42 (record citations omitted). The First DCA per curiam affirmed the circuit court's denial of this claim. Resp. Ex. FF; GG.

To the extent that the First DCA decided this claim on the merits,[15] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court

---

[15] In accordance with Wilson, the Court presumes that the appellate court adopted the "relevant reasoning" of the circuit court. Wilson, 138 S. Ct. at 1194.

concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Wallace is not entitled to relief on the basis of this claim.

Even if the state appellate court's adjudication of this claim is not entitled to deference, the claim in Ground Eight is without merit. As the state court correctly stated, motive is not an element of home invasion robbery. See §§ 812.13; 812.135 Fla. Stat. Accordingly, the underlying reasons why Wallace chose to rob the victims were irrelevant to the jury's determination of Wallace's guilt as to the charged offenses. As such, the Court finds there is no reasonable probability the outcome of the trial would have been different had counsel asked Drury whether Wallace owed him money. Therefore, the relief Wallace seeks in Ground Eight is due to be denied.

## I. Ground Nine

Wallace next asserts that his trial counsel was ineffective for calling a particular defense witness, although Wallace fails to name the witness. Doc. 27 at 12. According to Wallace, this unnamed witness negated his defense theory and made it appear as if Wallace and other defense witnesses were lying. Id.

Wallace raised a similar claim in his Rule 3.850 Motion. Resp. Ex. BB at 15. The circuit court denied this claim, ruling:

> The Defendant alleges that Counsel was defective by calling Chief [Farren] Gantous, from the Jennings Police Department, as a witness because his testimony on cross examination conflicted with Mr. Drury's testimony, and it diminished the credibility of Mr. Drury's favorable testimony. The alleged inconsistency concerned whether Mr. Drury

stated to Chief Gantous that a man, who Mr. Drury believed to be Cornelius Daniels (victim), approached him on the day prior to the robbery and kidnapping and admonished him that he, Mr. Drury, should remove Defendant's vehicle from his property. On direct, Mr. Drury stated he did make such a statement to Chief Gantous. However, on cross examination, Chief Gantous stated that he does not remember if Mr. Drury made the statement, but if it was not in his incident report, then Mr. Drury probably did not make the statement.

This Court finds this claim to be without merit. During closing arguments, Counsel addressed Chief Gantous['] testimony and attempted to reconcile the alleged inconsistency between Chief Gantous and Mr. Drury's testimony. Moreover, during closing arguments the State addressed a number of inconsistencies between the Defendant's mother (Ms. Wallace) and Mr. Drury's testimony, and between Nakeisha Federick (Defendant's girlfriend) and Mr. Drury's testimony. Thus, even if Chief Gantous had not testified, there were plenty of other inconsistencies with the testimony of Defense witnesses that cast doubt upon the credibility and reliability of Mr. Drury's testimony. Finally, this Court finds that any conflict between Mr. Drury and Chief Gantous' testimony was immaterial and did not wholly deprive the Defendant of a fair trial. Accordingly, Counsel was not defective, nor was the Defendant prejudiced under the Strickland standard. Ground Nine is denied.

Id. at 42 (record citations omitted). The First DCA per curiam affirmed the circuit court's order. Resp. Ex. FF; GG.

To the extent that the First DCA decided this claim on the merits,[16] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established

---

[16] In accordance with Wilson, the Court presumes that the appellate court adopted the "relevant reasoning" of the circuit court. Wilson, 138 S. Ct. at 1194.

federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Wallace is not entitled to relief on the basis of this claim.

Nevertheless, even if the state court's adjudication of this claim is not entitled to deference, the claim in Ground Nine is without merit. As Wallace has failed to allege in the Amended Petition which witness counsel should have refrained from calling, the Court finds this claim is due to be denied as conclusory. See Borden, 646 F.3d at 810; Wilson v. United States, 962 F.2d at 998. In any event, assuming the claim here is the same he raised in his Rule 3.850 Motion, Wallace cannot demonstrate deficient performance or prejudice. The record reflects Gantous initially testified that he believed Drury had told him someone warned Drury that Wallace's car would be vandalized. Counsel could not have known Gantous would have changed this testimony during cross-examination, as such, counsel cannot be deemed deficient for failing to foresee a witness would change his testimony. Moreover, even without Gantous' testimony, Wallace's alibi defense would not have been credible. The testimony of four witnesses refuted Wallace's alibi. Resp. Ex. F at 134-88. Wallace's alibi witnesses provided testimony that contradicted each other and evidence presented at trial. For instance, Drury testified Wallace's mother told him the day of the incident that Wallace had "gone south." Id. at 234. However, Wallace's mother testified she had not been home to talk on the phone on the day of the incident. Id. at 259-60. Likewise, Wallace's girlfriend, Nakeisha Federick, testified that Wallace had left with her mother and two other family members to go to Fort Lauderdale. Resp. Ex. G at 322-23. But Wallace testified he drove down to Fort Lauderdale with his girlfriend's mother and one other family member. Resp. Ex. F at 200-01. The state highlighted other

inconsistencies in the alibi witnesses' testimony as well during its closing arguments. Resp. Ex. H at 439-40. In light of these other inconsistencies that hurt the credibility of Wallace's alibi defense, the Court finds there is no reasonable probability the outcome of the trial would have been different had Gantous not been called as a witness. Accordingly, the claim raised in Ground Nine is due to be denied.

## J. Ground Ten

In Ground Ten, Wallace maintains that his trial counsel was ineffective because he failed to timely object when the prosecutor reacted to Wallace's testimony at trial. Doc. 27 at 13. Wallace asserts that his counsel's failure to object led the prosecutor to react in the same manner a second time and made it appear in the eyes of the jury that Wallace and his witness were both liars. Id.

Wallace raised this claim in his Rule 3.850 motion as ground ten. Resp. Ex. BB at 16. The circuit court denied this claim, stating:

> The Defendant alleges Counsel was defective when he failed to object to the prosecutor's reaction during Counsel's direct examination of Defendant's girlfriend. According to the Defendant, the prosecutor's reaction suggested to the jurors that the witness was lying. The record refutes this claim. During the Defendant's girlfriend's testimony, Counsel ceased his questioning and requested a side bar conference:
>
> COUNSEL: Judge, I want to be heard at the bench just a minute.
>
> COURT: Mr. Wallace, get where you can hear.
>
> COUNSEL: Judge, this is the second time this happened.
>
> COURT: What?

> COUNSEL: Okay. The prosecutor is reacting to the testimony. When she hears something that she disagrees with she turns and smiles at the jury and all that. It's highly improper for anyone, much less the prosecutor.
>
> COURT: Let me just stop you. I haven't seen it done, but if she is doing it you shouldn't do that.
>
> COUNSEL: I didn't object the first time.
>
> COURT: Well, I'm not saying it's true, but I'm saying I haven't seen it, but I'm telling both of you –
>
> STATE: I looked at my secretary.
>
> COURT: With everybody there together, don't do that. We all know not to make any reactions. Thank you.

The foregoing statements demonstrate that Counsel did object, and the Court thereby addressed Counsel's objection. Thereafter, the Court admonished the State to stop making gestures in reaction to testimony provided by the Defendant's girlfriend. Thus, Counsel engaged in conduct to prevent further improper conduct by the State. However, it appears that Defendant disapproves with the timeliness of Counsel's response.

This Court finds that Counsel's timeliness, or alleged absence of such, did not render his performance defective under the Strickland standard. As evidence in the Trial Transcript, Counsel witnessed the prosecutor engaged in this conduct, but decided to postpone an objection until the State engaged in such conduct again. This was Counsel's strategy. As such, this Court finds Counsel was not defective. Accordingly, Ground Ten is denied.

Id. at 43 (record citations omitted). The First DCA per curiam affirmed the circuit court's order. Resp. Ex. FF; GG.

To the extent that the First DCA decided this claim on the merits,[17] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Wallace is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim in Ground Ten is without merit. As reflected above, trial counsel did raise an objection to what he perceived were improper reactions from the prosecutor during the testimony of Nakeisha Federick. Resp. Ex. G at 398. The prosecutor denied making any improper reactions. Id. Likewise, the circuit court stated it had not seen such reactions but warned both sides against such behavior. Id. Accordingly, Wallace cannot demonstrate that the circuit court would have acted any differently had counsel raised this as an issue when he observed the first alleged improper reaction. Moreover, in light of the substantial evidence presented against Wallace, the Court finds there is no reasonable probability the outcome of the proceeding would have been different had the prosecutor not allegedly made disparaging faces. For the foregoing reasons, Wallace cannot demonstrate prejudice and his claim in Ground Ten is due to be denied.

---

[17] In accordance with Wilson, the Court presumes that the appellate court adopted the "relevant reasoning" of the circuit court. Wilson, 138 S. Ct. at 1194.

**K. Ground Eleven**

In Ground Eleven, Wallace alleges that his trial counsel was ineffective because he failed to request an instruction advising that the jury could disregard his prior felonies. Doc. 27 at 14. Wallace contends that the circuit court read an instruction stating the jury "could use Petitioner's prior felonies as evidence of his guilt in the current case." Id. Without a special instruction informing the jury they could disregard his prior convictions, Wallace asserts that the jury found him guilty because of those prior convictions and not on evidence introduced at trial. Id.

Wallace raised a similar claim in his Rule 3.850 Motion. Resp. Ex. BB at 19. In denying this claim, the circuit court explained:

> During jury instructions, the Court listed a number of factors for jurors to consider in weighing the credibility and reliability of a witness's testimony. The Court explained:
>
>> Now it is up to you to decide which evidence is reliable. You use your own good common sense in deciding which is the best evidence which should be relied upon considering the evidence and which should not. You may, of course, find that some evidence [is] not reliable or less reliable than some other evidence.
>>
>> Consider how the witnesses acted as well as what they said. And things that you ought to consider: Did a witness have an opportunity to learn and know those things that they came in here and gave testimony about?
>>
>> Did the witness have an accurate memory?
>>
>> Was the witness honest and straightforward in response to the questions that were asked by the attorneys?
>>
>> Did the witness have an interest in the outcome of the case?

Does a witness' testimony agree with the other testimony and evidence that was presented in the case?

Did a witness at some time make a statement that is inconsistent with testimony that he or she gave in court?

Was it proved that a witness had been convicted of a crime?

You rely upon your own conclusion about a witness. A juror may believe or disbelieve any part of all of any testimony of any witness.

The defendant here became a witness. Apply the same rules to considering his testimony as you would the testimony of any other witness.

Notably, the Court referred to prior conviction testimony as a factor for weighing the credibility and reliability of a witness and did not explicitly state that prior convictions cannot be relied on to determine Defendant's guilt. However, the State inquired about Defendant's prior convictions and addressed his convictions in closing arguments as a means to attack the credibility and reliability of his testimony. The State did not elicit prior conviction testimony as evidence of Defendant's guilt. Moreover and as stated above, the fact that the Defendant had a prior conviction was not material in the State's case-in-chief. Therefore, this Court finds that Counsel's alleged defective performance did not prejudice the Defendant. Ground Twelve is denied.

Id. at 44-45 (record citations omitted). The First DCA per curiam affirmed the circuit court's order. Resp. Ex. FF; GG.

To the extent that the First DCA decided this claim on the merits,[18] the Court will address the claim in accordance with the deferential standard for federal court review of

---

[18] In accordance with Wilson, the Court presumes that the appellate court adopted the "relevant reasoning" of the circuit court. Wilson, 138 S. Ct. at 1194.

state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Wallace is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim in Ground Eleven is without merit. Contrary to Wallace's contentions otherwise, the circuit court did not instruct the jury it could use Wallace's prior convictions against him to prove his guilt as to the charged offenses. Instead, the circuit court instructed the jury it could use prior convictions in determining the credibility of a witness. Resp. Ex. H at 513-14. Because the circuit court did not instruct the jury that prior convictions could be used to prove Wallace's guilt in the instant case, any request for an alternative jury instruction would have been meritless. Accordingly, counsel cannot be deemed deficient for failing to raise a meritless argument. See Diaz, 402 F.3d at 1142; Bolender, 16 F.3d at 1573. Additionally, as noted above, both victims positively identified Wallace as the perpetrator and multiple witnesses refuted Wallace's alibi. Resp. Exs. E at 26-44; F at 97-116, 134-88. In light of the substantial evidence of Wallace's guilt, the Court finds there is no reasonable probability the outcome of the trial would have been different if the jury had never known about Wallace's prior felony convictions. The claim in Ground Eleven is due to be denied because Wallace has failed to demonstrate deficient performance or prejudice.

**L. Ground Twelve**

Lastly, Wallace contends that his trial counsel was ineffective for advising him that the State had to file its PRR notice prior to trial or it could not seek a PRR sentence. Doc. 27 at 15. Wallace asserts this advice was erroneous as the State could file the PRR notice after trial but prior to sentencing. Id. Based on this misadvice, Wallace alleges he rejected a favorable ten-year plea offer. Id. Wallace notes that the circuit court denied a similar claim following an evidentiary hearing, after which it found trial counsel's testimony that he did not misadvise Wallace was more credible than Wallace's testimony. Id. at 15-16. However, Wallace contends that counsel's argument at the sentencing hearing that the PRR notice was untimely refutes his counsel's testimony at the evidentiary hearing. Id. at 16. In light of his counsel's argument at the sentencing hearing, Wallace maintains that the circuit court's order denying this claim involved an unreasonable determination of the facts in view of the evidence presented in the state court proceeding. Id. at 17.

Wallace raised this claim in state court as ground thirteen of his Rule 3.850 Motion, Resp. Ex. BB at 20, and as ground four of his Second Rule 3.850 Motion.[19] Resp. Ex. S at 6-7. In denying this claim as raised in the Rule 3.850 Motion, the circuit court stated:

> The record reflects that this Court already ruled on the merits of this ground.
>
> In Ground Four of the second rule 3.850 motion, the Defendant alleged that he "specifically asked defense counsel if he would be subject to sentencing as a Prison Release[e] Reoffender (PRR), defense counsel advised the Defendant that he would not be subject to sentencing as a PRR if the State did not serve notice of intent to seek PRR designation

---

[19] Although Wallace gave his Rule 3.850 Motion to prison officials in 2008 for mailing, due to a clerical error, the Rule 3.850 Motion was not filed until 2014, after the circuit court had already issued a final order on Wallace's Second Rule 3.850 Motion. Doc. 30 at 4.

prior to trial." The Defendant additionally alleged that but for this misadvice, he would have accepted the state's plea offer. The Court held a hearing on this ground and entered an order denying relief on the merits. Accordingly, this Court finds the doctrine of res judicate applies to the instant case, and Ground Thirteen is procedurally barred as this Court entered a ruling on the merits of this claim in a previous order.

Notwithstanding application of res judicata, this Court finds Ground Thirteen is refuted by the record. At the evidentiary hearing held on March 2, 2011, on Ground Four of the second rule 3.850 Motion, Counsel testified:

> Well in regard to the sentencing, it was pretty simple and straightforward. The State was offering a ten year prison term with no minimum whatsoever. I spoke with Mr. Wallace on March 31, 2006, at 9:15 a.m. I explained the offer to him. He told me that he wanted the trial, he did not want to accept the offer. And, at that point, I explained again that he could be – he was subject to being classified as a prison releasee reoffender, and if he was sentenced as a prison release[e] reoffender, meaning if he was found guilty as charged on either of these crimes, he was subject to that sentence and he would be facing a mandatory life sentence.

On cross, Counsel was asked by postconviction counsel if he ever advised the Defendant that "PRR would not apply to him because [the State] had not served the written notice prior to trial?" Counsel replied, "I did not." Thereafter, Counsel was called down from the bench and the Defendant provided his testimony. However, the Court, in weighing both Counsel's testimony and the Defendant's, found that Counsel's testimony was more credible, and thereby, denied Defendant relief. Here, this Court still finds that Counsel's testimony is more credible and relies on it to find that Ground Thirteen of the instant motion is refuted by the record. Therefore, Ground Thirteen is denied.

Resp. Ex. BB at 46-47 (record citations omitted). The First DCA per curiam affirmed the

circuit court's order. Resp. Ex. FF; GG.

In Wallace's Motion to Recall, he also raised the claim that his trial counsel lied under oath at the evidentiary hearing. Resp. Ex. KK at 1-12. The circuit court denied the Motion to Recall, finding Hunt did not commit fraud on the circuit court. Id. at 145-49. The First DCA affirmed the circuit court's order on Wallace's Motion to Recall, stating in pertinent part:

> Appellant argues that the 2011 order on his motion for postconviction relief was procured by fraud, because Mr. Hunt testified falsely when he stated that he understood the State did not have to give notice of its intent to seek PRR before trial, and that he never advised Appellant that PRR would not apply to him, because the State had not filed notice of PRR prior to trial. He further argues that Mr. Hunt's notes of his conversations with Appellant were falsified to the extent that they indicated that Mr. Hunt never advised him that PRR applied. In support, Appellant points to Mr. Hunt's argument at the 2006 sentencing hearing that, although he did not contest what the PRR statute said, he believed the court should apply the standard established for felony DUI cases, where, after conviction, a separate jury determination was required to establish whether the defendant had prior convictions.

> Appellant has not established fraud by clear and convincing evidence. Mr. Hunt's argument at the 2006 sentencing hearing was a policy argument offered to get the best possible sentencing for Appellant. This does not establish that Mr. Hunt misunderstood the PRR notice requirement; rather, the argument indicates that Mr. Hunt was requesting the court to apply a standard for policy reasons, even when he understood that the statute did not expressly require that standard. See R. Regulating Fla. Bar pmbl. ("As an advocate, a lawyer zealously asserts the client's position under the rules of the adversary system."). This argument does not "produce in the mind" a "firm belief and conviction, without hesitancy," that Mr. Hunt misunderstood the PRR notice requirements, misadvised Appellant based on that misunderstanding, and then gave false testimony and produced falsified notes contrary to that advice.

Resp. Ex. OO.

As the First DCA decided this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Wallace is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim in Ground Twelve is without merit. The circuit court made a factual determination that Hunt's testimony that he informed Wallace of his PRR eligibility and the potential for a mandatory life sentence was credible. Resp. Ex. BB at 46-47. Accordingly, the Court must presume this finding is correct unless Wallace can rebut it with clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). To overcome the presumption of correctness of the circuit court's factual finding, Wallace directs the Court to the sentencing hearing transcript in which Hunt argued to the circuit court that the State's PRR notice was untimely as evidence that Hunt lied during the evidentiary hearing. Doc. 27 at 15-16. However, Wallace also presented this argument to the circuit court and the circuit determined Hunt's testimony was still credible even though he argued the PRR notice was untimely. Resp. KK at 145-49. As such, the circuit court's factual determination on this issue also is presumed correct and Wallace has provided no evidence to rebut this finding. See 28 U.S.C. § 2254(e)(1). To the extent Wallace relies on the sentencing transcript as evidence to overcome the presumption of Hunt's credibility

at the evidentiary hearing, the Court finds this is not clear and convincing evidence that Hunt told Wallace the State could not seek a PRR sentence if it did not file a notice prior to trial. See id. Counsel's argument at sentencing was an attempt to advocate on behalf of his client and cannot be read as an affirmation of Wallace's allegation. Properly informing Wallace that he faced a PRR sentence but arguing a PRR sentence was not applicable is not mutually exclusive. Instead, it demonstrates a competent attorney covering all angles of an issue. Therefore, the Court finds counsel's testimony refutes Wallace's allegations and his claim in Ground Twelve is due to be denied.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Wallace seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Wallace "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the

petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.	The Amended Petition (Doc. 27) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.	The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.	If Wallace appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.	The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 22nd day of January, 2019.

MARCIA MORALES HOWARD
United States District Judge

Jax-8

C:    Tyrone Wallace, #G00799
      Jennifer Moore, Esq.